UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

1:22-cv-143

| | |
|---|---|
| REBECCA MICHELLE HAMRICK, individually and as parent of her minor children A.H. and K.H., and HAYLEY HARRISON,<br><br>        Plaintiffs,<br><br>v.<br><br>RUTHERFORD COUNTY, a political subdivision of the State of North Carolina, JOHN K. CARROLL, in his individual capacity, KIMBER DOVER-JACKSON, in her individual capacity, and KELSEY FERGUSON, in her individual capacity,<br><br>        Defendants. | **COMPLAINT**<br>[JURY TRIAL DEMANDED] |

## INTRODUCTION

1.      It was July 2019 when Rutherford County Department of Social Services ("RCDSS") stole Plaintiff Rebecca Michelle Hamrick's ("Michelle") biological minor children from her through threats, deceit, coercion, and use of an unlawful agreement that RCDSS framed as a "Safety Agreement" (the "SA"). The Defendants' actions impacted Michelle's relationship with her children, her children's relationship with Michelle, and their relationships with other family members.

2.      At the time Plaintiff Hayley Harrison was removed from her mother's custody and care, she was only sixteen years old. Now she brings this action to right a wrong done to her by Defendants when she was just a child.

3.     Michelle brings this action on her own behalf, and as parent and next friend of A.H. and K.H., her biological minor children, for damages and to redress the harms they all suffered at the Defendants' hands.

PARTIES

4.     Michelle is a citizen and resident of Rutherford County, North Carolina.

5.     A.H. is a citizen and resident of Rutherford County, North Carolina.

6.     K.H. is a citizen and resident of Rutherford County, North Carolina.

7.     Harrison is a citizen and resident of Rutherford County, North Carolina.

8.     Defendant Rutherford County is a political subdivision of North Carolina, organized and governed by North Carolina law.

9.     Defendant Director John K. Carroll ("Carroll" or "Director Carroll") was at all relevant times the RCDSS director and was an agent or employee of Rutherford County.

10.     Director Carroll held a public office created by state statute whereby he exercised a position of power and discretion, as allowed by law as set forth in N.C. Gen. Stat. § 7B-100 et. seq.

11.     Director Carroll has been trained in DSS's rules, regulations, policies, and procedures as promulgated by the NCDHHS and the associated North Carolina laws after assuming his responsibilities and duties.

12.     Director Carroll exercised personal and professional deliberation, made decisions, and exercised personal and professional judgment as set forth herein.

13. Director Carroll, as RCDSS director, had both the authority and responsibility to set and oversee all RCDSS policies and practices, including those complained of in this action.

14. As Director of RCDSS, Director Carroll had a duty of his office to, at all times, act in the best interest of each minor child upon whom RCDSS takes action.

15. Director Carroll was at all relevant times an official policy maker for Rutherford County.

16. Director Carroll was a public officer as defined by law at all relevant times.

17. Defendant Carroll is a citizen and resident of Cleveland County, North Carolina.

18. Defendant Kimber Dover Jackson ("Supervisor Jackson"), an RCDSS Supervisor, is and has been at all relevant times an agent and employee of Rutherford County, whose position of employment includes the authority and responsibility to carry out the policies of Defendant Rutherford County, and Director Carroll. Supervisor Jackson also had the responsibility and authority to oversee RCDSS social worker activities. Supervisor Jackson is a health and community worker.

19. Supervisor Jackson was a state actor as it relates to the allegations as set forth herein.

20. Supervisor Jackson exercised personal and professional deliberation, made decisions, and exercised personal and professional judgment as set forth herein.

21.     Supervisor Jackson is a citizen and resident of Cherokee County, South Carolina.

22.     Defendant Kelsey Ferguson ("SW Ferguson") is and has been at all relevant times a DSS social worker and as such, she iss and has been an agent and employee of Rutherford County, whose position of employment included the duty of carrying out the policies and practices of Defendants Rutherford County, Carroll, and Supervisor Jackson. SW Ferguson is a health and community worker.

23.     SW Ferguson was a state actor as it relates to the allegations as set forth herein.

24.     SW Ferguson exercised personal and professional deliberation, made decisions, and exercised personal and professional judgment as set forth herein.

25.     SW Ferguson is a citizen and resident of Rutherford County, North Carolina.

26.     Each and every agent and employee of RCDSS, is obligated at all times to act in the best interest of each minor child upon whom RCDSS takes any action.

27.     Defendants are not entitled to absolute, prosecutorial, or governmental immunity because the actions complained of herein were not undertaken during the process of prosecuting any claim of abuse, neglect, or dependency in a proceeding before Rutherford County District Court.

28.     Alternatively, all Defendants have waived any governmental immunity that may arguably apply, pursuant to N.C. Gen. Stat. § 153A-435 by the purchase of insurance and/or participation in the North Carolina Association of County

Commissioners Risk Management Pool, which provides coverage for the acts and omissions alleged against the Defendants herein.

<u>JURISDICTION & VENUE</u>

29.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because some of the claims alleged arise under federal law.

30.     This Court has jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367.

31.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

<u>FACTS</u>

32.     On or around July 13, 2019, RCDSS social worker Kelsey Ferguson visited Michelle's home in Rutherford County, North Carolina for the first time.

33.     At the time, Hayley was approximately age 16, K.H. was approximately age 14, and A.H. was approximately age 10 (collectively referred to as "Plaintiff children").

34.     Shortly after this first visit, Ferguson visited Michelle and her minor children at least once more.

35.     Ferguson and Michelle began to develop a relationship of trust over time as Ferguson visited Michelle's home. Michelle began to trust Ferguson and would communicate honestly with and confide in her.

36.     Ferguson began to develop a relationship of trust with the Plaintiff children as well. Plaintiff children also began to trust Ferguson and would communicate honestly with and confide in her.

## Michelle Signs the SA at SW Ferguson's Direction

37.     In or around late July 2019, SW Ferguson called Michelle and demanded that she leave work to meet Ferguson at RCDSS later that afternoon because Ferguson was going to remove the children from Michelle's home.

38.     Michelle, her mother, Susan Hamrick, and her sister, Christie Piercy (also known as Christie Hamrick), all went to the meeting at RCDSS.

39.     Plaintiff Hayley Harrison, Michelle's then minor child also attended the RCDSS meeting.

40.     SW Ferguson was at the RCDSS meeting. Upon information and belief, several other RCDSS employees or agents were also there, including Supervisor Jackson.

41.     Michelle was not represented by an independent attorney at the RCDSS meeting nor was she able to consult an independent attorney.

42.     While in the meeting, Michelle became visibly upset. SW Ferguson again told Michelle that she needed to choose where to place her children and execute the SA.  If she did not, RCDSS would take her children, place them into foster care, and Michelle would never see them again.

43.     Michelle, upset that her children were going to be forcibly removed from her custody and care, protested, and asked to speak with SW Ferguson's supervisor.

44.     Upon information and belief, SW Ferguson directed Michelle to speak with Supervisor Jackson.

45. Supervisor Jackson repeated SW Ferguson's threats: if Michelle did not choose where to place her children and execute the SA, RCDSS would take them, place them into foster care, and Michelle would never see them again.

46. Fearful that she would lose her children forever, Michelle agreed to place the Plaintiff children with Susan Hamrick, Plaintiff children's maternal grandmother, and executed the SA to that effect on July 24, 2019.

47. Additionally, Susan Hamrick, Christie, Supervisor Jackson, and SW Ferguson signed the SA on July 24 or July 25, 2019.

48. Contravening applicable law, the SA did not:

    a. Allow Michelle specified minimum visitation with Plaintiff children.

    b. Contain a finding that the Plaintiff children's removal or continuation in or return to their home would be contrary to their best interest.

    c. Contain findings as to whether the county department of social services has made reasonable efforts to prevent or eliminate the need for placement of the Plaintiff children, unless the court has previously determined that such efforts are not required and shall cease.

    d. Contain findings as to whether a county department of social services should continue to make reasonable efforts to prevent or eliminate the need for placement of the Plaintiff children.

e. Specify that the Plaintiff children's placement and care is the responsibility of the county department of social services and that the agency is to provide or arrange for the foster care or other placement of the juvenile.

f. Provide for services or other efforts aimed at returning the Plaintiff children to a safe home or at achieving another permanent plan for the Plaintiff children.

g. Direct that a review hearing (as required by N.C. Gen. Stat. § 7B-906) be held within 90 days from the date of the dispositional hearing.

Removal of the Plaintiff Children and their Ultimate Return

49. After the meeting, Michelle took the children to Susan Hamrick's home where the children remained for weeks without Michelle.

50. For at least fourteen days, the Plaintiff children were out of Michelle's custody and control and was unable to make decisions for or about her children during that time.

51. After the Plaintiff children were removed from Michelle's home, Michelle began her efforts to get them back. She asked SW Ferguson what she needed to do.

52. SW Ferguson stated that Michelle must: (1) take out an ex-parte order against her children's father, (2) take out a warrant on her minor children's father, and (3) have her minor children's father involuntarily committed.

53. SW Ferguson told Michelle that if she ever wanted to get her children back, she must do the above three things.

54. SW Ferguson also required that Michelle show SW Ferguson proof that Michelle did all three.

55. To get her children back, and at the direction of SW Ferguson, Michelle took out an ex-parte order, a warrant, and had her minor children's father involuntarily committed.

56. Michelle then told SW Ferguson that she completed what SW Ferguson demanded and showed her proof.

57. SW Ferguson told Michelle that she could get her children from Susan Hamrick's home and that the children could go back to living with Michelle.

58. On or around August 7, 2019, the Plaintiff children went back to living at Michelle's home.

59. At no point in time did Defendants advise Michelle of legal implications associated with signing the SA.

60. At no point in time did Defendants advise Michelle of legal implications associated with giving physical or legal custody to someone else.

61. At no point in time did Defendants provide Michelle time to contact or consult an independent attorney.

62. At no point in time did Michelle contact or consult an independent attorney.

63. At no point did any court of law hold any type of hearing or review.

64. At no point in time did any court of law or court official review the SA, or any version of it, nor was it filed in any juvenile action court file.

65.     The SA was not executed under Rutherford County District Court's supervision.

66.     At no point in time did any court of law hold a review hearing.

<u>CLAIM I – DEPRIVATION OF RIGHTS 42 U.S.C. § 1983</u>
(Plaintiffs v. Carroll, Jackson, and Ferguson)

67.     Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

68.     Defendants Carroll, Jackson, and Ferguson (hereinafter "RCDSS Employees") are "persons" as that term is used in 42 U.S.C. § 1983.

69.     At all relevant times, RCDSS employees were acting under color of state law.

70.     While the SAs were entered in the course and scope of RCDSS's child welfare, family services, and child protective services efforts, the facilitation of these SAs fall outside RCDSS's duties and responsibilities of imposed by N.C. Gen. Stat. §§ 7B-108A, -108A(14), -108A(18) and other applicable statutes.

71.     At no time after the Plaintiff children's removal did the RCDSS Employees, or any other health or community worker, review the placement as required by N.C. Gen. Stat. § 7B-100 *et. seq.*, or check on the health, safety, or welfare of the minor Plaintiff children.

72.     At all times relevant, Defendant Rutherford County delegated RCDSS oversight, supervision, policies, and procedures to its directors, who act at the authorization of Rutherford County.

73. Pursuant to N.C. Gen. Stat. § 7B-100 et. seq., Director Carroll was at all times relevant to this complaint the final policy maker with regard to all investigative and placement activities conducted by his staff, subordinates, attorney, and employees – including Supervisor Jackson and SW Ferguson.

74. At all times relevant, Director Carroll was acting under the color of state law.

75. At all times relevant, Defendant Supervisor Jackson was acting under color of state law.

76. At all times relevant, Defendant SW Ferguson was acting under color of state law.

77. At all times relevant, the Defendants were acting within the scope of their employment.

78. Michelle has a constitutionally protected liberty interest and right to custody of her children.

79. The Plaintiff children have a constitutionally protected liberty interest and right to live with their parents and be parented by their parents.

80. Parents have a right to live with their children free from government involvement, like Defendant Rutherford County, and government agencies, like RCDSS, absent proof by clear, cogent, and convincing evidence of abuse, neglect, or dependency being produced in a court of law.

81. Children also have a right to live with their parent or parents free from the government's involvement and involvement by any of its agencies, like RCDSS,

absent proof by clear, cogent, and convincing evidence of abuse, neglect, or dependency being produced in a court of law.

82.     Children and parents have the right to live together as a family without government interference.

83.     The only way a social worker, agent, or a DSS Director may lawfully remove a child under North Carolina law is by clear, cogent and convincing evidence based on allegations of abuse, neglect or dependency.

84.     Only a court order, arising from due deliberation, duly signed by a judge, and filed with the court, can be used to interfere, interrupt, or prevent the relationship between a parent and a child.

85.     No judicial authorization ever occurred for this SA as it relates to the allegations as set forth herein, which removed Hayley, A.H., and K.H. from their mother.

86.     The Plaintiffs were not informed of the harm which would result from the SA's execution, and instead relied upon RCDSS's representations, who withheld such information, to the Plaintiffs' detriment.

87.     No statement was ever alleged in the SA that the children would be removed from the jurisdiction of the Court.

88.     No statement was ever alleged in the SA as it relates to a child being covered by the Indian Child Welfare Act even when it was necessary to do so.

89.     At all times relevant, the Defendants failed to accurately represent the laws and facts to Michelle during the process that resulted in the removal of Plaintiff children.

90.     At all times relevant, the Defendants lacked any legal right to remove the Plaintiff children.

91.     At all times relevant, there existed no legal authority for the Defendants to remove the Plaintiff children.

92.     At all times relevant, Michelle was never noticed or provided a pre-deprivation hearing as required by North Carolina law or by any process otherwise due.

93.     At all times relevant, Michelle was never allowed or provided a post-deprivation hearing as it relates to the allegations as set forth herein.

94.     The Defendants' conduct towards the Plaintiffs shocks the conscience and was not supported in law or fact.

95.     The right to parent one's child is enshrined in the Due Process Clause of the 14th Amendment to the Constitution of the United States and the Law of the Land Clause in Article I, Section 19 of the North Carolina Constitution.

96.     The Defendants' conduct violated Plaintiffs' constitutional rights which were clearly established at the time these violations occurred.

97.     Defendants' actions deprived Plaintiffs of their constitutional rights and violated their rights to both procedural and substantive due process.

98. Defendants' actions resulted in the Plaintiff children's unlawful seizure in violation of the Fourth Amendment to the Constitution of the United States.

99. Defendants' actions unlawfully deprived Michelle and the Plaintiff children of their respective freedom to associate with each other in violation of the First Amendment to the Constitution of the United States.

100. Defendants' actions deprived Plaintiffs procedural due process by interfering with their right to freedom of association in violation of their rights under the First Amendment to the Constitution of the United States.

101. Defendants' actions deprived Plaintiffs of procedural due process by not providing a prompt and fair post-deprivation juridical review in violation of Plaintiffs' rights under the Fourteenth Amendment to the Constitution of the United States.

102. Defendants' actions were made with deliberate indifference and deprived Plaintiffs of substantive due process in that they shock the conscience of the Court. The SA's use was intended to and did allow RCDSS and its agents and employees to evade judicial review of their coercive and unlawful actions and separate parents from their children without lawful authority. Defendants' actions violated Plaintiffs' rights to substantive due process in violation of the Fourteenth Amendment of the Constitution of the United States.

103. Defendants engaged in conduct in furtherance of the object of this conspiracy and induced others to engage in conduct in furtherance of those conspiracies.

104.     Defendants engaged in such conduct in bad faith and with intentional, reckless, and callous disregard for, and deliberate indifference to Plaintiffs' rights.

105.     As a direct and foreseeable consequence of this deprivation, Michelle and Plaintiff children were separated for at a minimum fourteen days.

106.     As a direct and foreseeable consequence of this conduct, Michelle and Plaintiff children suffered pain and suffering, emotional trauma and distress, mental anguish, and Michelle was prevented from providing for the care, custody, and control of Plaintiff children.

107.     The SA was unlawful and obtained in violation of Michelle's federally and state law protected rights particularly those under the U.S. Constitution, North Carolina Constitution, and North Carolina General Statutes in many ways, including but not limited to:

a.     The agreement is not permitted by, did not comply with, and is contrary to the provisions of N.C. Gen. Stat. § 7B-100 *et. seq.*, of the North Carolina General Statutes because:

i.     The agreement did not allow Plaintiff specified minimum visitation with the Plaintiff children, in violation of N.C. Gen. Stat. § 7B-905.

ii.     The agreement failed to follow the mandate of N.C. Gen. Stat. § 7B-507(a), which provides that any order placing or continuing the placement of a juvenile in the custody or placement responsibility of a county department of social services (whether it is an Order for

nonsecure custody, continued nonsecure custody, a dispositional Order, or a review Order):

      1.    Shall contain a finding the juvenile's removal or continuation in or return to the juvenile's home would be contrary to the juvenile's best interest;

      2.    Shall contain findings as to whether the county department of social services has made reasonable efforts to prevent or eliminate the need for placement of the juvenile, unless the court has previously determined that such efforts are not required and shall cease;

      3.    Shall contain findings as to whether a county department of social services should continue to make reasonable efforts to prevent or eliminate the need for the juvenile's placement;

      4.    Shall specify that the juvenile's placement and care is the responsibility of the county department of social services and that the agency is to provide or arrange for the foster care or other placement of the juvenile; and

      5.    May provide for services or other efforts aimed at returning the juvenile to a safe home or at achieving another permanent plan for the juvenile.

iii.     The agreement is unauthorized by N.C. Gen. Stat. § 7B-100 *et. seq.*, which does not authorize RCDSS to enter into private custody agreements, file private custody actions, or take any actions regarding custody of a minor child without judicial action.

1.     This SA is more like a private parental custody agreement than a custody order entered under the authority of N.C. Gen. Stat. § 7B-100 *et. seq.*

2.     While similar to a private parental custody agreement, this SA is not authorized under N.C. Gen. Stat. § 50-13.l *et seq.* or N.C. Gen. Stat. § S0A-101 *et seq.*; and this SA, though appearing to be like a private parental custody agreement, are prohibited by law.

iv.     Under N.C. Gen. Stat. § 7B-905(b), a dispositional order under which a juvenile is removed from the custody of a parent, guardian, custodian, or caretaker shall direct that a review hearing (as required by N.C. Gen. Stat. § 7B-906 be held within 90 days from the date of the dispositional hearing.

v.     The SA was not executed under the supervision of Rutherford County District Court which possesses original and exclusive jurisdiction over all juveniles alleged to be abused, neglected, dependent, undisciplined, or delinquent within the County. *See* N.C. Gen. Stat. § 7B-200, 7B-1600, and 7B-1601.

vi.      It was not executed under the supervision of Rutherford County District Court which possesses original and exclusive jurisdiction over all child custody actions. *See* N.C. Gen. Stat. § 50A-201(b) and N.C. Gen. Stat. § Chapter 50-13.l *et seq.*,

vii.      It was not reviewed by a court official or guardian ad litem for the minor children and it was not filed in the minor children's juvenile action court file.

viii.      North Carolina District Court has the original and exclusive jurisdiction over all matters regarding all minor children within the state (excluding adoptions).

b.      The SA failed to follow the North Carolina Rules of Practice and Rules of Civil Procedure because (i) it was not signed by a judge or filed with the Rutherford County Clerk of Court's office, and (ii) Defendants did not file any motion, notice for hearing, or in any other way bring before or otherwise seek court approval or oversight in entering the SA.

c.      The SA's execution lacked any legal safeguards for Michelle's or Plaintiff children's rights as required by N.C. Gen. Stat. § 7B-100 *et. seq.* and the Constitutions of the United States and North Carolina.

d.      The SA was used to deprive Michelle and the Plaintiff children of the right to procedural due process and substantive due process.

e.      Other ways that shall be ascertained through discovery and proven at trial.

108. Defendants represented to Plaintiffs and Plaintiffs in reasonable reliance on Defendants' representations believed the SAs were binding legal documents with the same force and effect as an order of the Court, based on the Defendants' representations.

109. Director Carroll and others who were in the position to establish and promulgate RCDSS policies and official practices were aware of, approved, and directed the use of the SA or substantively similar "agreements."

110. As a result, Plaintiffs are entitled to recover damages in an amount to be determined at trial.

<u>CLAIM II – DEPRIVATION OF RIGHTS 42 U.S.C. § 1983</u>
<u>(Plaintiffs v. Rutherford County)</u>
(<u>*Monnell v. Dep't of Social Services*, 436 U.S. 658</u>)

111. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

112. Rutherford County is governed by a Board of Commissioners, who have oversight over all county programs and departments. RCDSS is a department of Rutherford County.

113. The RCDSS Director, pursuant to N.C. Gen. Stat. § 7B-100 *et. seq.*, is the final policymaker for all policies and procedures established to govern RCDSS operations and activities, a power granted to the Director by Rutherford County.

114. Defendant Carroll was at all relevant times the Director of RCDSS.

115.   The named Defendants are "persons" as defined pursuant to 42 U.S.C. §1983 and *Monnell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018 (1978), and its progeny.

116.   Defendant Carroll established as official policy or custom the use of SAs, or substantively similar agreements, to coerce Michelle to surrender custody of her children in violation of her rights under the First, Fourth and Fourteenth Amendments to the United States Constitution.

117.   The fundamental right to familial relations is constitutionally protected.

118.   Rutherford County, by and through its final policy maker, maintained a policy, custom, or pattern of practice of promoting, facilitating, and condoning the improper, illegal, and unconstitutional techniques by RCDSS social workers and other RCDSS employees.

119.   Rutherford County further demonstrated deliberate indifference to the unlawful, unconstitutional, and unconscionable actions of their delegated policymakers, and further failed to adequately train, supervise, or discipline the Defendants as set forth herein in connection with protecting and ensuring Plaintiffs' constitutional rights.

120.   Because the County Commissioners of Rutherford County and/or the Director of RCDSS were the final policy makers during the past several years, their acts or omissions during that time constituted RCDSS policy, custom, or pattern and practice.

121.  As the final policymaker for RCDSS, the County Commissioners of Rutherford County and/or the Director of RCDSS created, promulgated, and maintained the following polices, customs, or patters and practices which deprived Plaintiffs of their constitutionally protected rights by:

a.  Failing to properly train and supervise RCDSS social workers and employees regarding their duties not to (1) fabricate purportedly legal documents; (2) coerce signatures from plaintiffs whereby they gave up their right to parent; (3) separate a parent from a child; (4) remove a child from his/her family; (5) conceal the SA process from NCDHSS auditors; (6) intentionally and recklessly fail to follow the procedures as set forth in N.C. Gen. Stat. § 7B-100 *et. seq.*; (7) ignore the policies and guidelines as set forth by NCDHHS as it relates to safety plans, removal procedures, maintaining contact between parents and children, providing a reunification plan for parents and children and following up on placement of the minor children to ensure their safety, health and essential needs are being adequately met. Upon information and belief, the Defendants made factually inaccurate statements to the affected Plaintiff children.

b.  Encouraging, promoting and condoning RCDSS social workers to (1) fabricate purportedly legal documents; (2) coerce signatures from Plaintiffs whereby they gave up their right to parent; (3) separate a parent from a child; (4) remove a child from his/her family; (5) conceal the SAs process from NCDHSS auditors; (6) intentionally and recklessly fail to follow the procedures

as set forth in N.C. Gen. Stat. § 7B-100 *et. seq.*; (7) ignore the policies and guidelines as set forth by NCDHHS as it relates to safety plans, removal procedures, maintaining contact between parents and children, providing a reunification plan for parents and children and following up on placement of the minor children to ensure their safety, health and essential needs are being adequately met; and (8) fostering a climate of impunity for engaging in such unconstitutional conduct.

c.      Creating, promulgating, and maintain a policy, custom, or pattern of practice of failing to follow the law as set forth in N.C. Gen. Stat. § 7B-100 *et. seq.*, the policies, procedures, and guidelines as set forth by NCDHHS and other behaviors, conduct or practices to be learned through discovery and proved at trial.

122.    The wrongful acts and omissions that deprived Michelle of custody of her children and her right to parent occurred pursuant to Rutherford County and RCDSS's policies, customs, patterns, practices, and conduct.

123.    The policies, practices, customs, and patterns of conduct of RCDSS and that of Rutherford County directly and proximately caused Michelle to be unable to act as a parent to her children, associate with her children or enjoy her constitutionally protected rights accordingly.

124.    As a result, Plaintiffs are entitled to recover damages in an amount to be determined at trial.

## CLAIM III – NEGLIGENCE
## Alternatively, Gross Negligence
(Plaintiffs v. Carroll, Jackson and Ferguson)

125.   Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

126.   At all times relevant to the transactions and occurrences giving rise to the complaint, Defendants received the training required by the state to be RCDSS employees and/or agents.

127.   Upon information and belief, RCDSS approved use of the SA by either official policy, unofficial custom, or constituted an official endorsed or accepted practice of RCDSS.

128.   Chapter 7B of the General Statutes clearly states that it "shall be interpreted and construed so as to . . . provide procedures for the hearing of juvenile cases that assure fairness and equity and that "protect the constitutional rights of juveniles and parents ...." N.C. Gen. Stat. § 7B-100(1) (emphasis added).

129.   Upon information and belief, Defendants represented using SAs or other similar documents were lawful.

130.   Upon information and belief, all Defendants received training from the North Carolina Department of Health and Human Services on the proper procedures for child removal pursuant to N.C. Gen. Stat. § 7B-100 *et. seq*.

131.   Upon information and belief, there is a written manual promulgated by NCDHHS setting forth written instructions for county departments of social services

on the proper and lawful methods to remove children from their homes pursuant to N.C. Gen. Stat. § 7B-100 *et seq*.

132.   Defendants used the SA to deprive Plaintiff of her children and Plaintiff children of their mother.

133.   The Defendants acted with deliberate indifference to such training, the law, Plaintiffs' rights, and in other ways yet to be discovered through discovery on the merits.

134.   Alternatively, through their conduct as described herein, Defendants acted in reckless disregard of, or with wanton indifference to, such training, the law, Plaintiffs' rights, and in other ways yet to be discovered through discovery on the merits. Defendants' gross and utter failure to take care to follow the constitutional and statutory mandates regarding the removal of children from the home as described herein clearly demonstrates deliberate indifference to the Plaintiffs' rights and constitutes willful and wanton conduct.

135.   As a result of Defendants' failures to exercise its requisite duty of care, Defendants proximately caused the injuries described herein.

136.   As a direct or proximate result of Defendants' actions, Plaintiffs have suffered damages in an amount to be determined at trial.

<u>CLAIM IV – NEGLIGENT MISREPRESENTATION</u>
<u>(Plaintiff v. Carroll, Jackson, and Ferguson)</u>

137.   Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

138.    Defendants made statements to Plaintiffs regarding the legality of the SA and the impact that signing the SA would have on them and their children.

139.    Defendants made, or caused to be made, material misrepresentations and/or misleading statements to Plaintiffs as described above. These misrepresentations were made negligently, and without regard for their truth.

140.    Defendants intended their misrepresentations to be relied upon by Plaintiffs, and Plaintiffs, in fact, reasonably relied on Defendants' representations in executing the SA, or other similar documents.

141.    Defendants failed to exercise reasonable care and competence in communicating the material facts to Plaintiffs.

142.    Plaintiffs actually and reasonably relied upon the false information and/or material facts not disclosed by Defendants, and Plaintiffs' reliance was justifiable as, under the same or similar circumstances, a reasonable person or party, in the exercise of ordinary care for its own welfare would have either relied on the negligent misrepresentations or would not have discovered them.

143.    Plaintiffs' reliance proximately caused them to incur damages.

144.    As a result of Defendants' negligent misrepresentations, Plaintiffs have incurred damages and such damages were proximately caused by Defendants' conduct. These proximate injuries would not have occurred if Defendants had not made the omissions or misleading statements to Plaintiffs.

145.    As a proximate result of Defendants' conduct, Plaintiffs have suffered damages in an amount to be determined at trial.

<u>CLAIM V – NEGLIGENT SUPERVISION</u>
<u>Alternatively, Gross Negligent Supervision</u>
(Plaintiff v. Defendant Jackson)

146. Plaintiffs incorporate by reference all allegations of this Complaint as if fully set out herein.

147. Chapter 7B of the General Statutes clearly states that it "shall be interpreted and construed so as to . . . provide procedures for the hearing of juvenile cases that assure fairness and equity and that protect the constitutional rights of juveniles and parents ...." N.C. Gen. Stat. § 7B-100(1).

148. Supervisor Jackson had a duty to ensure that she established policies for RCDSS that protected the constitutional rights of juveniles and parents.

149. Supervisor Jackson had a duty to supervise the social workers, supervisors, attorney, and other RCDSS employees to ensure that their actions did not violate the constitutional rights of juveniles or parents.

150. Supervisor Jackson had a duty to establish protective services for juveniles alleged to be abused, neglected, or dependent. N.C. Gen. Stat. § 7B-300.

151. Supervisor Jackson had a duty to make a prompt and thorough assessment of a complaint that a juvenile within Rutherford County is abused, neglected, or dependent. N.C. Gen. Stat. § 7B-302(a).

152. By law, if during this assessment, Director Carroll determined that removal of the juvenile from the child's home is necessary for the protection of the juvenile, the Director is required to "sign a petition seeking to invoke the jurisdiction of the court for the juvenile's protection." N.C. Gen. Stat. § 302(c).

153.    Therefore, as final policy maker and final supervisor over all employees and agents of RCDSS, Supervisor Jackson had a duty to ensure that the agents and employees of RCDSS acted pursuant to applicable constitutional and statutory mandates.

154.    Supervisor Jackson failed to exercise her supervisory authority and thereby breached these duties.

155.    Supervisor Jackson further failed to make any inquiry into and respond appropriately to the unlawful conduct described throughout this Complaint.

156.    Supervisor Jackson further failed to supervise her employees to ensure that a petition seeking to invoke the jurisdiction of the juvenile court was filed when removal of a juvenile from his/her hone was deemed appropriate for the juvenile's protection.

157.    In the alternative, Supervisor Jackson's conduct or failures to act was done in reckless disregard for Plaintiffs' rights. Traditionally, gross negligence has been defined as "wanton conduct done with conscious or reckless disregard for the rights and safety of others."

158.    Supervisor Jackson was negligent or grossly negligent in her failure to properly oversee the RCDSS, including SW Ferguson and social workers like SW Ferguson.

159.    These negligent or grossly negligent failures on Supervisor Jackson's part to discharge her duties of care proximately caused the injuries described in this Complaint.

160.    As a result of Supervisor Jackson's negligence or, alternatively, her gross negligence, Plaintiffs are entitled to damages in an amount to be determined at trial.

CLAIM VI – ACTUAL FRAUD
(Plaintiff v. Carroll, Jackson, and Ferguson)

161.    Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

162.    The Defendants' statements to Michelle described above regarding the SAs and removal of her children were false, misleading, and material at the time they were made.

163.    Defendants knew these statements were false at the time they were made.

164.    The Defendants made these false statements with the intention that Plaintiffs would rely on these misrepresentations, sign the SA, and give up her children.

165.    Plaintiffs trusted Ferguson because of the special relationship SW Ferguson developed with them over time as she visited their home and spent time with them.

166.    As a result, Michelle relied on the Defendants' false statements when signing the SA and giving up her minor children to a non-parent third party.

167.    No provision of law exists within the North Carolina General Statutes authorizing RCDSS to draft or otherwise effect the SA or any substantively similar agreement.

168. The misrepresentations were made willfully and wantonly, and with intention of coercing and/or otherwise deceiving Michelle into abandoning her rights as a parent.

169. Defendants' false representations to Plaintiffs were reasonably calculated to deceive.

170. Defendants' false representations were made with the intent to deceive and with the intent to be acted upon.

171. Plaintiffs were, in fact, deceived by Defendants' false representations and acted upon them.

172. Plaintiffs reasonably relied on Defendants' representations in signing the SAs because a reasonable person, in the exercise of ordinary care for her own welfare would have relied on the false representations.

173. Michelle reasonably relied on Defendants' representations in permitting RCDSS to remove her minor children and place them with Susan Hamrick because a reasonable person, in the exercise of ordinary care for her own welfare, would have relied on the false representations – especially when the false representation was that if Michelle did not follow RCDSS's orders, her minor children would go into the foster care system and Michelle would never see her minor children again.

174. Defendants have acted intentionally and with malice toward Plaintiffs and/or in reckless disregard of Plaintiffs' rights.

175. Plaintiffs have suffered damages proximately caused by Defendants' false representations.

176. As a result of Defendants' deceit, fraud and fraudulent inducement, Plaintiffs are entitled to a judgment against Defendants for their damages, plus attorneys' fees, in amounts to be determined at trial.

CLAIM VII– CONSTRUCTIVE FRAUD
(Plaintiffs v. Carroll, Jackson, and Ferguson)

177. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

178. "A constructive fraud claim ... is based on a confidential relationship rather than a specific misrepresentation. The very nature of constructive fraud defies specific and concise allegations and the particularity requirement may be met by alleging facts and circumstances '(1) which created the relation of trust and confidence, and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.'" *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678-79 (1981) (quoting *Rhodes v. Jones*, 232 N.C. 548-49, 61 S.E. 2d at 725 (1950)).

179. Upon information and belief, Defendants and its agents and employees had a special, confidential relationship of trust with Michelle before or while obtaining the signatures on the SA and coercing her to give up her minor children to a non-parent third party.

180. Plaintiffs trusted Ferguson because of the special relationship SW Ferguson developed with them over time as Ferguson visited Plaintiffs in their home on more than one occasion.

181. Defendants, including Rutherford CLAIMy agents and employees, used coercive assertions, as more fully described above, to Michelle to obtain her signature on the SA.

182. Michelle relied on the position of trust and authority occupied by Defendants when she acquiesced to Defendants' attempts to obtain her signatures on the SA and to give up her children. Michelle reasonably relied on Defendants' representations because if she did not, she risked having her minor children removed, placed into the foster care system to never be seen again.

183. Michelle and her children were injured as a proximate result of Defendants' conduct.

184. As a result of Defendants' conduct, Plaintiffs suffered damages in an amount to be determined at trial.

<u>CLAIM VIII– CIVIL OBSTRUCTION OF JUSTICE</u>
(Plaintiffs v. Carroll, Jackson, and Ferguson)

185. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

186. Upon information and belief, Defendants were aware of the legal requirements involved in the removal of a child from the custody of her parent. Defendants disregarded these requirements.

187. Defendants used the SAs or substantively similar agreements to avoid judicial supervision and oversight of their unlawful activities and to deny Plaintiffs the right to access to justice and the right to open courts.

188. Defendants thereby obstructed the administration of public and legal justice by means of their unlawful actions as described throughout this Complaint.

189. Plaintiffs were harmed by the unlawful actions taken by the Defendants in their attempt to obstruct justice as set forth elsewhere in the Complaint.

190. As a result of Defendants' conduct, Plaintiffs suffered damages in an amount to be determined at trial.

## CLAIM IX – VIOLATIONS OF THE NORTH CAROLINA CONSTITUTION
### (Plaintiffs v. Carroll, Jackson, and Ferguson)

191. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

192. The Fourteenth Amendment to the Constitution of the United States provides that no person shall be "deprive[d] ... of life, liberty, or property, without due process of law . . . ." Article I, Section 19 of the North Carolina Constitution states that "[n]o person shall be... or in any manner deprived of his life, liberty, or property, but by the law of the land."

193. The Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.

194. To ensure that all parents enjoy the protections of due process in any case where DSS seeks to remove a child from his or her parent, the North Carolina General Assembly has enacted N.C. Gen. Stat. § 7B-100 *et. Seq.* of the North Carolina General Statutes to govern all proceedings in which a juvenile is alleged to be abused, neglected, or dependent.

195. It is beyond dispute that one of the fundamental rights enjoyed by all parents under the United States Constitution is the right to raise their children without government interference.

196. The same protection is extended to the people of North Carolina by Article 1, Section 19 of the North Carolina Constitution and is fundamentally required under Article I, section 35 of the North Carolina Constitution.

197. The term "law of the land" as used in Article I, Section 19 of the North Carolina Constitution means the general law, the law which hears before it condemns, which proceeds upon inquiry, and renders judgment only after trial. It means the regular course of the administration of justice through the courts of competent jurisdiction, after the manner of such courts. Procedure must be consistent with the fundamental principles of liberty and justice. *State v. Chesson*, 228 N.C. 259, 45 S.E.2d 563 (1947), *writ dismissed*, 334 U.S. 806, 68 S. Ct. 1185, 92 L. Ed. 1739 (1948).

198. Among other things, "the law of the land" or "due process of law" imports both notice and the opportunity to be heard before a competent tribunal. *Parker v. Stewart*, 29 N.C. App. 747, 225 S.E.2d 632 (1976).

199. Moreover, "law of the land" as used in Article I, Section 19 of the North Carolina Constitution is synonymous with "due process of law" as that term is applied under the Fourteenth Amendment to the United States Constitution.

200. The General Assembly has clearly states that the DSS Code "shall be interpreted and construed so as to . . . provide procedures for the hearing of juvenile

cases that assure fairness and equity and that protect the constitutional rights of juveniles and parents . . . ." N.C. Gen. Stat. § 7B-100(1).

201. The State's and RCDSS's compliance with the DSS Code is how the constitutional rights described above are protected.

202. There is no provision of law permitting the use of extrajudicial SAs, or other similar agreements, to obtain the voluntary surrender of parental custody.

203. Therefore, Defendants' use of SAs or other substantively similar documents violated Michelle's rights under Article I, Section 19 of the North Carolina Constitution.

204. As a result of Defendants' violations of the North Carolina Constitution, Plaintiffs have suffered damages in an amount to be determined at trial.

<u>CLAIM X– PUNITIVE DAMAGES & ATTORNEYS FEES</u>

205. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

206. Defendants, in each claim for relief, by their actions as set forth in this Complaint, have acted intentionally, willfully, wantonly, and maliciously in causing the injuries complained of.

207. By their intentional, willful, wanton, and malicious behavior, Defendants have caused injuries to Plaintiffs as set forth elsewhere in this Complaint, including:

      a.    Violating their rights under the Constitutions of the United States and North Carolina;

b.     Defrauding them;

c.     Obstructing justice and denying them access to juvenile court; and

d.     Damage to the safety, well-being, mental health, and familial cohesiveness of Plaintiffs, who were separated from each other for at least 14 days.

208.   As a direct and foreseeable consequence of Defendants' conduct, Michelle suffered pain and suffering, mental anguish, emotional trauma, and distress, and was prevented from providing for the care, custody, and control of her minor children during valuable and critical times.

209.    As a direct and foreseeable consequence of Defendants' conduct, the Plaintiff children suffered pain and suffering, mental anguish, emotional trauma, and distress from being removed from their parents.

210.   The intentional, willful, wanton, malicious and oppressive conduct of the Defendants are the proximate cause of injuries sustained by the Plaintiffs. As a result, Plaintiffs are entitled to punitive damages in an amount to be determined at trial.

211.   Plaintiffs are entitled to an award of attorney's fees pursuant to 42 U.S.C. § 1988(b) and other applicable federal and state statutes covering the allegations as set forth herein.

WHEREFORE the Plaintiffs pray the Court and demand judgment:

1.     For an award to each Plaintiff for damages, including but not limited to pain and suffering, nominal, compensatory, consequential, punitive, and other such damage, as well as pre- and post- judgment interest thereon for some or all, in an amount proven to be determined at trial;

2.     For an award of attorneys' fees and costs as allowable by all applicable laws;

3.     For a trial by jury; and

4.     For such other and further relief as the Court may deem just and proper.

This 23rd of July, 2022.

Respectfully,



By:     /s/ Sophia Pappalardo
        Bo Caudill
        N.C. Bar No. 45104
        bocaudill@villmercaudill.com
        Sophia M. Pappalardo
        N.C. Bar No. 56743
        sophiapappalardo@villmercaudill.com
        VILLMER CAUDILL, PLLC
        P.O. Box 18186
        Charlotte, NC 28218
        Tel: 704-216-8120
        Fax: 704-705-8191
        *Counsel for Plaintiffs*