IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:22-cv-00143-MR-WCM

FILED
ASHEVILLE, NC

MAR 24 2023

U.S. DISTRICT COURT
W. DISTRICT OF N.C.

REBECCA MICHELLE HAMRICK )
*individually and as a parent of her* )
*minor children A.H. and K. H.;* and, )
HALEY HARRISON, )
)
Plaintiffs, )
)
v. )
)
RUTHERFORD COUNTY, *a political* )
*subdivision of the State of North* )
*Carolina;* )
JOHN K. CARROLL, *in his* )
*individual capacity;* )
KIMBER DOVER-JACKSON, *in her* )
*individual capacity;* and, )
KELSEY FERGUSON, *in her* )
*individual capacity,* )
)
Defendants. )
)

MEMORANDUM AND
RECOMMENDATION

This matter is before the Court on Defendants' Motion to Dismiss (Doc.

7) which has been referred to the undersigned pursuant to 28 U.S.C. § 636 for

the entry of a recommendation.

I.      Procedural Background

On July 23, 2022, Plaintiffs filed their Complaint against Rutherford

County, John K. Carroll ("Carroll"), who is the director of the Rutherford

County Department of Social Services (the "Department"), Kimber Dover-

1

Jackson ("Dover-Jackson"), who is a supervisor with the Department, and Kelsey Ferguson ("Ferguson"), who is a social worker with the Department. Doc. 1 at ¶¶ 9, 18, 22, 42.

On October 3, 2022, Defendants filed the instant Motion to Dismiss and a supporting memorandum. Docs. 7, 8. Plaintiffs have responded, and Defendants have replied. Docs. 13, 14.

## II. Plaintiff's Allegations

The Complaint alleges that on July 13, 2019, Ferguson visited the home of Rebecca Michelle Hamrick ("Hamrick") and her three children: Hayley Harrison ("Harrison"), K.H., and A.H. (collectively, the "Minor Children"). Doc. 1 at ¶ 32. At the time, Harrison was approximately sixteen years old (though she has since reached the age of majority), K.H. was approximately fourteen years old, and A.H. was approximately ten years old. Id. at ¶ 33.

Ferguson visited Plaintiffs at least once more, and both Hamrick and the Minor Children began to trust Ferguson and would "communicate honestly with and confide in her." Id. at ¶¶ 35, 36.

"In or around late July 2019," Ferguson called Hamrick and demanded that Hamrick leave work to meet Ferguson at the Department later that day "because Ferguson was going to remove the [Minor Children] from [Hamrick's] home." Id. at ¶ 37. Hamrick, Hamrick's mother (Susan Hamrick), Hamrick's

sister (Christie Piercy), and Harrison attended the meeting. Id. at ¶ 38. Ferguson and Dover-Jackson also attended. Id. at ¶ 40.[1]

Hamrick alleges that during the meeting, she became visibly upset, and that Ferguson told Hamrick she needed to choose where to place the Minor Children and to execute a Safety Agreement. Id. at ¶ 42. Ferguson also told her that if she did not, the Department "would take her children, place them into foster care, and [Hamrick] would never see them again." Id.

Hamrick asked to speak with Ferguson's supervisor; Plaintiffs allege upon information and belief that Ferguson then directed Hamrick to speak with Dover-Jackson. Dover-Jackson "repeated [Ferguson's] threats: if [Hamrick] did not choose where to place her children and execute the [Safety Agreement], [the Department] would take them, place them into foster care, and [Hamrick] would never see them again." Id. at ¶ 45.

Hamrick was not represented by counsel at the meeting, nor was she able to consult with an attorney. Id. at ¶ 41. "Fearful that she would lose her children forever," Hamrick agreed to place them with her mother and executed the Safety Agreement to that effect on July 24, 2019. Id. at ¶ 46. Susan

---

[1] It is not clear whether Dover-Jackson was present for the entire meeting or arrived after Hamrick asked to speak with Ferguson's supervisor, as described below.

Hamrick, Christie Piercy, Dover-Jackson, and Ferguson signed the Safety Agreement the same day or the following day. Id. at ¶ 47.[2]

Following the meeting, Hamrick took the Minor Children to her mother's home, where they remained for "at least fourteen days." Id. at ¶¶ 49, 50. Hamrick then "began her efforts to get the [Minor Children] back;" in that regard, Ferguson told Hamrick that she needed to "(1) take out an ex-parte order against her children's father, (2) take out a warrant on her minor children's father, and (3) have her minor children's father involuntarily committed." Id. at ¶ 52. After Hamrick provided Ferguson proof that Hamrick had done these things, Ferguson told Hamrick that "she could get her children from [her mother's] home and that the [Minor Children] could go back to living

---

[2] Plaintiffs did not attach the Safety Agreement to the Complaint. Defendants have submitted, under seal, a copy of what they contend is the Safety Agreement. Doc. 9. Defendants have also submitted a copy of "North Carolina Safety Assessment Instructions" (the "Instructions," Doc. 8-3) and an August 15, 2016 letter from the North Carolina Department of Social Services regarding "Temporary Parental Safety Agreements" (the "Letter," Doc. 8-4). In reviewing a motion to dismiss, a court may consider the allegations in the complaint, matters of public record, and documents attached to the motion to dismiss that are integral to the complaint and authentic. See Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir.2009). Here, Defendants assert that the Instructions and Letter are public records, and that the Safety Agreement is integral to the Complaint. However, Plaintiffs dispute the authenticity of the Safety Agreement submitted by Defendants and contend that the Court should not consider any documents outside the pleadings. Doc. 13 at 8 n. 3. Under these circumstances, the undersigned has not considered these documents when issuing the instant Memorandum and Recommendation.

with her." Id. at ¶ 56-57. On or about August 7, 2019, the Minor Children "went back to living at [Hamrick's] home." Id. at ¶ 58.

Plaintiffs contend that the Safety Agreement contravened North Carolina law in multiple ways. Id. at ¶ 48 (alleging, for example, that the Safety Agreement did not include certain findings required by statute). Additionally, Plaintiffs allege that Defendants failed to advise Hamrick of the legal implications of the Safety Agreement, that Defendants failed to provide Hamrick with the opportunity to consult with counsel, and that the Safety Agreement was not properly reviewed by any court. See id. at ¶¶ 59-60, 61-62, 63-66.

Plaintiffs assert claims pursuant to 42 U.S.C. § 1983 for violations of their constitutional rights, a claim pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978), various state law tort claims, and a claim for violations of the North Carolina Constitution as follows:

5

| | Department | Carroll | Dover-Jackson | Ferguson |
|---|---|---|---|---|
| 42 U.S.C. § 1983 | | X | X | X |
| Monell Claim | X | | | |
| Negligence | | X | X | X |
| Negligent Misrepresentation | | X | X | X |
| Negligent Supervision | | | X | |
| Actual Fraud | | X | X | X |
| Constructive Fraud | | X | X | X |
| Civil Obstruction of Justice | | X | X | X |
| Violations of the North Carolina Constitution | | X | X | X |

The Complaint also requests an award of punitive damages and attorney's fees. Doc. 1 at ¶¶ 205-211.

Defendants' Motion to Dismiss does not seek dismissal of the claims of actual fraud and civil obstruction of justice against Dover-Jackson and Ferguson and does not address Plaintiffs' request for punitive damages and attorney's fees.

III.    Legal Standard

When considering a motion made pursuant to Rule 12(b)(6), the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009).

6

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Consumeraffairs.com, 591 F.3d at 255. In short, the well-pled factual allegations must move a plaintiff's claim from conceivable to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

IV.    Discussion

A. Section 1983 Claims

"The Federal Civil Rights Act, 42 U.S.C. § 1983, imposes civil liability upon every person who, under color of law, deprives another of rights secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. To prevail on a Section 1983 claim, the plaintiff has the burden of establishing (1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed under color of state law."

7

Hogan, et al. v. Cherokee County, et al., 519 F.Supp.3d 263, 278 (W.D.N.C. 2021) (citing Austin v. Paramount Parks, Inc., 195 F.3d 715, 727 (4th Cir. 1999)). Section 1983 "creates no substantive rights; it merely provides remedies for deprivation of rights established elsewhere." City of Okla. City v. Tuttle, 471 U.S. 808, 816 (1985) (citation omitted).

Here, Defendants do not argue that they were not acting under color of law. Rather, they challenge Plaintiffs' assertion that Defendants' conduct violated Plaintiffs' procedural and substantive due process rights.[3]

### 1.    Section 1983 Claim Against Carroll

To hold a government official individually liable under Section 1983, a plaintiff must "affirmatively show[ ] that the official charged acted personally in the deprivation of the plaintiff's rights." Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (quoting Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977)). To meet this standard, it is sufficient for a plaintiff to demonstrate that the defendant had "personal knowledge of and involvement in the alleged deprivation." Wright, 766 F.2d at 850 (4th Cir. 1985). While "mere knowledge of such a deprivation does not suffice," Williamson v. Stirling, 912 F.3d 154,

---

[3] Plaintiffs also allege that Defendants' actions resulted in an "unlawful seizure" of the Minor Children in violation of the Fourth Amendment, and "unlawfully deprived" Hamrick and the Minor Children of their "respective freedom to associate with each other in violation of the First Amendment." Doc. 1 at ¶ 99. The Motion to Dismiss does not address these additional contentions.

171 (4th Cir. 2018), "if the evidence showed that conduct directly causing the deprivation was done to effectuate an official policy or custom for which [the individual defendant] was responsible," the defendant may be liable. <u>Fisher v. Wash. Metro. Area Transit Auth.</u>, 690 F.2d 1133, 1143 (4th Cir. 1982).

Here, Plaintiffs allege that Carroll "and others who were in the position to establish and promulgate [Department] policies and official practices were aware of, approved, and directed the use of the [Safety Agreement] or substantively similar 'agreements.'" Doc. 1 at ¶ 109.

However, the Complaint does not allege that Carroll attended any of the July 2019 meetings between Plaintiffs and Ferguson and/or Dover-Jackson, or that Carroll was personally involved with Plaintiffs' case.

Further, though Plaintiffs argue in their briefing that Carroll was "responsible for the creation or promulgation and execution of policies that led directly to Plaintiffs' injury, including the use of [Safety Agreements], and the threat of permanent removal as a means to coerce voluntary placement," Doc. 13 at 11, there are no factual allegations in the Complaint to indicate that Carroll drafted the Safety Agreement, advised Ferguson or Dover-Jackson regarding the use of Safety Agreements, or established a policy of "coercing voluntary placement" of children.

9

2. Section 1983 Claims Against Dover-Jackson and Ferguson

a. Procedural Due Process

Defendants argue that Plaintiffs' procedural due process claim is barred because Hamrick was not required to sign the Safety Agreement and waived her rights by signing it. See Doc. 8 at 11.

The Fourteenth Amendment provides, in part, that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV.

However, these procedural safeguards may be waived when a plaintiff consents to governmental action. Hogan, 519 F.Supp.3d at 278. "Thus, if a parent 'voluntarily surrenders a liberty interest to the State, there has been no 'deprivation' of that interest by the State, and no [procedural] due process violation.'" Id. (quoting Weller v. Dep't of Soc. Servs. for City of Baltimore, 901 F.2d 387, 393 (4th Cir. 1990) (citing Stone v. University of Maryland Medical System Corp., 855 F.2d 167, 172–73 (4th Cir. 1988)); Smith v. Williams-Ash, 520 F.3d 596, 600 (6th Cir. 2008) (stating that where a parent voluntarily consents to a custody plan, "no hearing of any kind is necessary; hearings are required for deprivations taken over objection, not for steps authorized by consent") (quoting Dupuy v. Samuels, 465 F.3d 757, 761-62 (7th Cir. 2006)).

The initial issue presented here, though, is whether Hamrick voluntarily executed the Safety Agreement.

In that regard, Plaintiffs acknowledge that Hamrick signed the Safety Agreement. However, they have also alleged that Hamrick did so after both Ferguson and Dover-Jackson told Hamrick that if she did not sign it, the Minor Children would be placed in foster care and Hamrick would never see them again.

Given that the allegations must be considered in the light most favorable to Plaintiffs at this stage, the undersigned is not persuaded that it is sufficiently clear from the Complaint that Hamrick's execution of the Safety Agreement was a voluntary act by which she should be deemed to have waived her procedural due process rights. See Hogan, 519 F.Supp.3d at 278-279 (explaining that a waiver of a constitutional right must be voluntary, knowing, and intelligent, and denying defendants' motion for summary judgment based on waiver where, although plaintiff signed a Custody and Visitation Agreement, he was given only a short amount of time to review the agreement, had no opportunity to confer with counsel, and was told that his child would be placed in foster care and that he would never see her again unless he signed the agreement); see also In the Matter of B.C.T., J.B.B., 265 N.C.App. 176, 185, n. 7 (2019) (both a "voluntary placement agreement" and a "temporary parental safety agreement" must be executed voluntarily).

11

### b. Substantive Due Process

The "interest of parents in the care, custody, and control of their children ... is perhaps the oldest of the fundamental liberty interests recognized." Troxel v. Granville, 530 U.S. 57, 65 (2000). Indeed, "the sanctity of the family unit is a fundamental precept firmly ensconced in the Constitution and shielded by the Due Process Clause of the Fourteenth Amendment." Hodge v. Jones, 31 F.3d 157, 163 (4th Cir. 1994); Santosky v. Kramer, 455 U.S. 745, 753 (1982); D.B. v. Cardall, 826 F.3d 721, 740 (4th Cir. 2016) ("just as parents possess a fundamental right with respect to their children, children also enjoy a familial right to be raised and nurtured by their parents") (citation omitted)); see also Weller v. Dep't of Social Servs. for City of Baltimore, 901 F.2d 387, 395 (4th Cir. 1990) ("It is clear that the private, fundamental liberty interest in retaining the custody of one's child and the integrity of one's family is of the greatest importance").

Nonetheless, "when the government removes a child from a parent's custody for the child's protection, only an abuse of power which 'shocks the conscience' creates a substantive due process violation." Hogan, 519 F.Supp.3d at 280 (quoting Wolf v. Fauquier Cty. Bd. of Supervisors, 555 F.3d 311, 322 (4th Cir. 2009) (citing Collins v. City of Harker Heights, 503 U.S. 115, 129, (1992)).

Here, Defendants argue that it is proper for the Department to use agreements like the one at issue in this matter, and that such agreements "were created and were specifically authorized by" the North Carolina Department of Health and Human Services. Doc. 8 at 8. Defendants further contend that the statutory provisions Plaintiffs claim were violated by Defendants' use of the Safety Agreement do not apply where a parent voluntarily enters into an agreement for protective services. Id. at 9-10.[4]

As discussed above, though, it is not sufficiently clear from the existing record that Hamrick executed the Safety Agreement voluntarily.[5]

### 3.    Qualified Immunity

Defendants also assert that Carroll, Dover-Jackson, and Ferguson are entitled to qualified immunity because the Safety Agreement "was authorized by NCDHHS," the length of time Hamrick was separated from the Minor Children was "was within the forty day time limit set by NCDHHS," and

---

[4] According to Defendants, these provisions only apply when a parent refuses to sign an agreement and the Department proceeds to take unilateral action.

[5] The undersigned does not reach the question of whether Safety Agreements are valid generally since Plaintiffs' allegations raise questions about the circumstances under which this specific Safety Agreement was signed by Hamrick. Put another way, the question of whether Safety Agreements are legally acceptable generally is a separate question from whether the agreement at issue in this case was properly formed.

13

because "Defendants' use of [the Safety Agreement] under the facts that they encountered was a reasonable choice…" Doc. 8 at 15-16.[6]

In evaluating whether a defendant is entitled to qualified immunity, courts determine "(1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." Raub v. Campbell, 785 F.3d 876, 881 (4th Cir. 2015). The sequence in which these issues are addressed is left to the court's discretion. See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

As the Court in Hogan recently explained, in a non-emergent situation, it is "clearly established that parents generally have a right of due process before removal of children by the state…." 519 F.Supp.3d at 282.

Here, Plaintiffs have alleged that Hamrick signed the Safety Agreement only after being told by Ferguson and Dover-Jackson that if she did not, she would lose custody of the Minor Children, and never see them again. As discussed above, the undersigned is persuaded that these allegations, when taken as true, are sufficient to state claims for violations of Plaintiffs' procedural and substantive due process rights.

---

[6] Because the undersigned recommends that Plaintiffs' Section 1983 claim against Carroll be dismissed based on the lack of factual allegations reflecting his personal involvement in the alleged constitutional violations, it is not necessary to determine whether Carroll is entitled to qualified immunity.

14

Further, while Defendants contend that their use of the Safety Agreement was reasonable "under the facts that they encountered," Plaintiffs' Complaint does not describe the context or circumstances that existed or why Ferguson and Dover-Jackson required Hamrick to sign the Safety Agreement, or otherwise indicate that there was an emergent situation requiring immediate action to protect the Minor Children.

The undersigned therefore concludes that Dover-Jackson and Ferguson are not, at this stage, entitled to qualified immunity. See Hogan, 519 F.Supp.3d at 282 (denying summary judgment on qualified immunity grounds).

### B. Monell Claim

A local government "cannot be held liable [under § 1983] solely because it employs a tortfeasor." Monell v. Dept. of Soc. Servs. Of City of New York, 436 U.S. 658, 691 (1978) (emphasis in original). Rather, a local government is liable under Section 1983 only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. at 690; see also Drury v. Dziwanowski, No. MJG-15-3845, 2016 WL 1045801, at *3 (D. Md. May 16, 2016) ("In order to adequately plead a Monell claim, a complaint must contain sufficient allegations that an official policy or custom fairly attributable to the County existed and that this policy proximately caused the alleged tortious actions of the Active Defendants") (citing Walker v. Prince

George's Cnty., 575 F.3d 426, 431 (4th Cir. 2009) (affirming district court dismissal of Monell claim against a county where complaint failed to make any allegations about the existence of a policy, custom, or practice)). A policy or custom can be created:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."
>
> Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (quoting Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)).

Here, Plaintiffs allege that Carroll, in his role as the director of the Department, was an official policy maker for Rutherford County and had the authority and responsibility to oversee the Department's policies and practices. Id. at ¶¶ 9, 13, 15.

Plaintiffs further allege that Carroll "established as official policy or custom the use of [Safety Agreements], or substantively similar agreements," and that the Department's social workers were improperly trained and were encouraged to coerce signatures on Safety Agreements, conceal the use of Safety Agreements from the North Carolina Department of Health and Human

16

Services, and ignore statutory and regulatory guidelines regarding safety plans and removal and reunification procedures. See Doc. 1 at ¶¶ 116, 121.

However, there are no factual statements in the Complaint to support the allegation that the Department had a policy of coercing the execution of Safety Agreements, or that a persistent and widespread practice of such coercion actually existed. See Horton v. City of Raleigh, No. 5:15-CV-349-FL, 2016 WL 2901743 at *5 (E.D.N.C. 2016) ("plaintiffs must allege some factual content permitting a reasonable inference of multiple incidents of prior violations").

### C. Tort Claims

Defendants move to dismiss all of Plaintiffs' tort claims, except for the claims for actual fraud and civil obstruction of justice against Dover-Jackson and Ferguson.

#### 1.    Against Carroll

Defendants argue that Plaintiffs' tort claims against Carroll should be dismissed because "there are no allegations that [he] was in any way involved in the [Safety Agreement]." Doc. 8 at 21.

The undersigned agrees. Although Plaintiffs have asserted claims of negligence, negligent misrepresentation, actual fraud, constructive fraud, and civil obstruction of justice against Carroll, the Complaint lacks factual

allegations that Carroll was personally involved in the Department's interactions with Plaintiffs.

### 2.     Against Dover-Jackson and Ferguson

#### a. Negligence-Based Claims

Defendants argue that Plaintiffs' claims of negligence/gross negligence and negligent misrepresentation (against Dover-Jackson and Ferguson) and negligent supervision (against Dover-Jackson) are barred by public official immunity.

Public official immunity "protects public officials from individual liability for negligence in the performance of their governmental or discretionary duties." Campbell v. Anderson, 156 N.C.App. 371, 376 (2003). "A public official can only be held individually liable for damages when the conduct complained of is malicious, corrupt, or outside the scope of official authority." Hunter v. Transylvania Cty. Dep't of Soc. Servs., 207 N.C. App. 735, 737 (2010).

As recently explained in Hogan:

> A public official acts "with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." Grad v. Kaasa, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984); see also Bailey v. Kennedy, 349 F.3d 731, 742 (4th Cir. 2003). "An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." Id. Accordingly, public officers' immunity "is unavailable to officers who violate clearly established rights

because an officer acts with malice when he 'does that which a man of reasonable intelligence would have known to be contrary to his duty.'" Bailey, 349 F.3d at 742 (quoting Grad, 321 S.E.2d at 890, 312 N.C. 310).

Hogan, 519 F.Supp.3d at 288.

As discussed above, the undersigned is persuaded that Defendants are not entitled to qualified immunity with respect to Plaintiff's Section 1983 claims. Similarly, the undersigned is persuaded that Dover-Jackson and Ferguson are not, on the current record, entitled to public official immunity for Plaintiffs' negligence-based claims. See Hogan, 519 F.Supp.3d at 288 ("The 'man of reasonable intelligence standard is 'functionally identical' to the federal 'clearly established' standard; therefore, much of the analysis is the same") (citing Cooper v. Sheehan, 735 F.3d 153, 160 (4th Cir. 2013)).

**b. Constructive Fraud**

Defendants assert that there was no special relationship between Dover-Jackson and Ferguson on the one hand, and Hamrick or the Minor Children on the other, to support a claim of constructive fraud.

"[A] claim for constructive fraud "arises where a confidential or fiduciary relationship exists, and its proof is less exacting than that required for actual fraud." Hogan, 519 F.Supp.3d at 289 (quoting Watts v. Cumberland Cty. Hosp. Sys., Inc., 317 N.C. 110, 115-16 (1986)). "To assert a cause of action for constructive fraud, the plaintiff must allege facts and circumstances '(1) which

created the relation of trust and confidence, and (2) led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.'" <u>Head v. Gould Killian CPA Group, P.A.</u>, 371 N.C. 2, 9 (2018) (quoting <u>Rhodes v. Jones</u>, 232 N.C. 547, 549 (1950)).

Here, Plaintiffs allege that Ferguson visited Hamrick and the Minor Children in their home at least twice prior to the execution of the Safety Agreement and that Hamrick and the Minor Children "began to develop a relationship of trust" with Ferguson and "would communicate honestly with and confide in" her. Doc. 1 at ¶¶ 32-36. Additionally, Plaintiffs argue that Carroll, Dover-Jackson, and Ferguson "stood in special relation to [the Minor Children] because of their statutory obligations to act in [the Minor Children's] best interests." Doc. 13 at 18 (citing N.C. Gen. Stat. § 7B-100(1)).

However, a confidential or fiduciary relationship did not exist between the individual Defendants and Hamrick and the Minor Children by virtue of these Defendants' statutory obligations. <u>See</u> <u>Hogan, et al. v. Cherokee County, et al.</u>, No. 1:18 CV 96-MR-WCM, 2019 WL 2591089, at *8 (W.D.N.C. Feb. 28, 2019) ("neither the fact that the State of North Carolina has an interest in protecting the constitutional rights of parents who may interact with a county Department of Social Services, nor the existence of the statutes it has passed to further that interest, appear to create a confidential or fiduciary relationship

between Cherokee DSS and its representatives, such as Director Palmer and Attorney Lindsay, and parents such as Hogan that would support a claim for constructive fraud"), memorandum and recommendation adopted, 2019 WL 1376074 (W.D.N.C. March 27, 2019); Rogers v. Cumberland County Department of Social Services, No. 5:20-CV-477-BO, 2020 WL 9216464, at *18 (E.D.N.C. Nov. 23, 2020) ("there is no fiduciary relationship between DSS employees and families"), memorandum and recommendation adopted, 2021 WL 916924 (E.D.N.C. March 9, 2021).

Further, Plaintiffs' allegations that a confidential relationship had formed between Plaintiffs and Ferguson are not plausible. While the Complaint alleges that a relationship of trust existed, this relationship was based on limited interactions that occurred over a two-week period and culminated in a July 2019 meeting at the Department that was adversarial — a meeting during which Hamrick was "visibly upset" and asked to speak with Ferguson's supervisor after Ferguson made statements that Plaintiffs characterize as "threats." Doc. 1 at ¶¶ 42-43, 45.

As to Dover-Jackson, there are no allegations in the Complaint that Plaintiffs and Dover-Jackson had any interactions prior to the July 2019 meeting at the Department, during which Dover-Jackson "repeated...Ferguson's threats...." Doc. 1 at ¶¶ 43-45.

## D. North Carolina Constitutional Claims

"A plaintiff may pursue an action directly under the North Carolina Constitution only where the plaintiff lacks an adequate remedy under state law to redress the alleged violation." <u>Hogan</u>, 519 F.Supp.3d at 290 (citing <u>Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ.</u>, 363 N.C. 334, 338 (2009)); <u>Corum v. Univ. of N.C.</u>, 330 N.C. 761, 782 (1992). An adequate state remedy is one that "addresses the alleged constitutional injury" and "provides the plaintiff an opportunity to enter the courthouse doors." <u>Taylor v. Wake Cty.</u>, 258 N.C. App. 178 (2018) (internal citations and quotations omitted); <u>Copper ex rel. Copper v. Denlinger</u>, 363 N.C. 784, 789 (2010) ("[T]o be considered adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim").

Here, Defendants have not moved to dismiss Plaintiffs' actual fraud and obstruction of justice claims against Dover-Jackson and Ferguson, such that these claims should proceed. As a result, Plaintiffs have an adequate remedy under state law. <u>See</u> <u>Johnson v. City of Fayetteville</u>, No. 5:12-CV-456-F, 2013 WL 12165680, at *16 (E.D.N.C. Mar. 28, 2013) (granting motion to dismiss the plaintiffs' claims under the North Carolina Constitution on the basis that there was a "possibility of relief"); <u>Hogan</u>, 519 F.Supp.3d at 290 ("the inability to pursue certain claims that are barred by immunity does not deprive the Plaintiffs of an adequate remedy pursuant to state law for redressing their

22

alleged injuries") (citing <u>Glenn-Robinson v. Acker</u>, 140 N.C. App. 606, 631–32 (2000)).[7]

## V. Recommendation

The undersigned respectfully **RECOMMENDS** that Defendants' Motion to Dismiss (Doc. 7) be **GRANTED IN PART** and **DENIED IN PART** and that:

1) Plaintiffs' claims against Carroll be **DISMISSED** in their entirety;

2) Plaintiffs' <u>Monell</u> claim against the Department be **DISMISSED**;

3) Plaintiffs' claims of constructive fraud and under the North Carolina Constitution against Dover-Jackson and Ferguson be **DISMISSED**; and

4) In all other respects, Defendants' Motion be **DENIED**, and that the following claims be allowed to proceed:

   a. Against Dover-Jackson: Section 1983 claim, negligence, negligent misrepresentation, negligent supervision, actual fraud, and civil obstruction of justice.

---

[7] Further, the undersigned recommends that other claims against Dover-Jackson and Ferguson be allowed to proceed.

23

b. Against Ferguson: Section 1983 claim, negligence, negligent misrepresentation, actual fraud, and civil obstruction of justice.

This the 24th day of March, 2023.

W. Carleton Metcalf
United States Magistrate Judge

### Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).